UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DALE LEE MADSEN, ET AL.,          )
                                  )
          Plaintiffs,             )
                                  )          CIVIL ACTION NO.
VS.                               )
                                  )          3:12-CV-0896-G
BANK OF AMERICA, N.A.,            )
                                  )
          Defendant.              )

## MEMORANDUM OPINION AND ORDER

Before the court is the defendant's motion for summary judgment (docket
entry 14).  For the reasons stated below, the motion is granted.

## I.  BACKGROUND

### A.  Factual Background

This is a suit for alleged wrongful foreclosure and violations of Texas
constitutional provisions governing home equity loans.  In March 2008, Dale and
Barbara Madsen (the "plaintiffs") refinanced their property located at 1621 Fair Oaks
Drive, Irving, Texas  75060 (the "Property"), which is their homestead.  *See*

Defendant's Motion for Summary Judgment ("Motion") at 2 (docket entry 14).[1]  At

the closing of this transaction, the plaintiffs executed a Texas Home Equity Note in

the amount of $70,000.00 (the "Note") and a Texas Home Equity Security

Instrument (the "Security Instrument") in favor of Plaza Home Mortgage, Inc., the

predecessor in interest of the defendant in this case, Bank of America, N.A. ("Bank of

America").  *Id.*  Bank of America is the owner and holder of the note by way of an

endorsement on the Note as successor to Countrywide Bank.  *Id.*  Bank of America is

also the beneficiary of the Security Instrument by way of assignment.  *Id.*  The Note

and Security Instrument constitute a home equity loan for purposes of Section 50 of

Article XVI of the Texas Constitution.  *Id.*; *see also* Tex. Const. Art. XVI § 50(a)(6).

On March 26, 2008, in connection with the loan, the plaintiffs signed

documents that acknowledged the loan complied with all legal requirements,

including the provisions of the Texas Constitution that the plaintiffs now claim that

Bank of America violated.  *Id.* at 3.  On the same date, the plaintiffs signed the HUD-

1 Settlement Statement ("HUD-1") used in the loan.  *Id.*  The HUD-1 lists

$4,805.84 as fees and closing costs charged to the plaintiffs, with a lender credit of

$1,502.86, for a total amount of closing costs of $3,302.98.  *Id.*

---

[1]     The plaintiffs admitted paragraphs 2-6 and 8-13 of the "Factual
Background" section of Bank of America's motion for summary judgment.  *See*
Plaintiffs' Response to Defendant's Motion for Summary Judgment at 6 ¶ 6 (docket
entry 16).

Also on March 26, 2008, the plaintiffs signed a document entitled Acknowledgment Regarding Fair Market Value of Homestead Property ("Acknowledgment"). *Id.* The Acknowledgment states that the plaintiffs, as owners of the Property, acknowledge that the fair market value of the Property at closing was $100,000.00. *Id.* The appraisal that Bank of America claims was used to arrive at this value was dated March 13, 2008 (the "appraisal"). *Id.*; *see also* Defendant's Appendix in Support of its Motion for Summary Judgment ("Defendant's App."), Exhibit A-7 at 38-58 (docket entry 15-8). Bank of America asserts that its predecessor relied on the appraisal and the Acknowledgment as to the fair market value of the Property at the time the loan was extended and had no actual knowledge that the appraised and acknowledged value was incorrect. *Id.*

The plaintiffs defaulted under the terms of the Note on December 1, 2010, for non-payment. *Id.* at 4. The plaintiffs made their last payment towards the loan on December 1, 2010. *Id.* Bank of America sought to foreclose the lien via judicial process in Dallas County, and subsequently the plaintiffs filed a petition commencing this suit in the 191st Judicial District Court of Dallas County. *Id.*

B. Procedural Background

On January 26, 2012, the plaintiffs filed this suit in a Texas state court. *See* Defendant's Notice of Removal, Exhibit A, Plaintiff's Original Petition ("Petition") at 1 (docket entry 1-1). On March 12, 2012, Bank of America filed an answer in the

state court.  *Id.*, Defendant's Original Answer ("Answer") at 1 (docket entry 1-1).  On

March 26, 2012, Bank of America timely removed the case to this court.  *See*

Defendant's Notice of Removal ("Notice of Removal") at 1 (docket entry 1).  On

April 16, 2012, Bank of America filed a counterclaim.  *See* Defendant's Original

Counterclaim ("Counterclaim") (docket entry 8).  On December 31, 2012, Bank of

America filed the instant motion for summary judgment.  *See* Motion.

## II.  ANALYSIS

### A.  Summary Judgment Standard

Summary judgment is proper when the pleadings, depositions, admissions,

disclosure materials on file, and affidavits, if any, "show[] that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of

law."  FED. R. CIV. P. 56(a), (c)(1).[2]  A fact is material if the governing substantive

law identifies it as having the potential to affect the outcome of the suit.  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue as to a material fact is

genuine "if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party."  *Id.*; see also *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481,

489 (5th Cir. 2001) ("An issue is '*genuine*' if it is real and substantial, as opposed to

---

[2]        Disposition of a case through summary judgment "reinforces the
purpose of the Rules, to achieve the just, speedy, and inexpensive determination of
actions, and, when appropriate, affords a merciful end to litigation that would
otherwise be lengthy and expensive."  *Fontenot v. Upjohn Company*, 780 F.2d 1190,
1197 (5th Cir. 1986).

merely formal, pretended, or a sham.").  To demonstrate a genuine issue as to the material facts, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Company v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986).  The nonmoving party must show that the evidence is sufficient to support the resolution of the material factual issues in his favor. *Anderson*, 477 U.S. at 249 (citing *First National Bank of Arizona v. Cities Service Company*, 391 U.S. 253, 288-89 (1968)).

When evaluating a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party. *Id.* at 255 (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)).  However, it is not incumbent upon the court to comb the record in search of evidence that creates a genuine issue as to a material fact.  See *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).  The nonmoving party has a duty to designate the evidence in the record that establishes the existence of genuine issues as to the material facts. *Celotex Corporation v. Catrett*, 477 U.S. 317, 324 (1986).  "When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara*, 353 F.3d at 405.

B.  <u>Plaintiffs' Waiver Argument</u>

As a threshold matter, the plaintiffs argue that Bank of America has waived its argument that, under Tex. Const. Art. XVI § 50(h), it may conclusively rely on the Acknowledgment to show that the amount of the home equity loan was in compliance with § 50(a)(6)(B).  *See* Plaintiffs' Brief in Response to Defendant's Motion for Summary Judgment ("Response") at 10 (docket entry 17).  The plaintiffs contend that § 50(h) is an affirmative defense, which was not mentioned in Bank of America's answer filed in state court, and therefore it is waived.  *Id.*

The court is not persuaded that the plaintiffs' characterization of § 50(h) as an "affirmative defense" is correct.  First, the court notes that the plaintiffs cite no authority supporting this assertion.  Second, what authority exists in this district and circuit suggests that a plaintiff seeking to invalidate a home equity note or mortgage under Article XVI § 50 has the burden to show (as part of the "elements" of his case) that the loan the defendant extended violated the Texas Constitution's provisions. See *Poswalk v. GMAC Mortgage, LLC*, 2012 WL 2193982, at *1 n. 3 (N.D. Tex. June 15, 2012) (Fitzwater, C.J.), citing *In re Chambers*, 419 B.R. 652, 671 (Bankr. E.D. Tex. 2009).  This burden would appear to include a showing that (1) either there is no § 50(h) acknowledgment or that the acknowledgment was defective, or (2) that the defendant had knowledge that the acknowledgment's stated fair market value was incorrect.

Finally, even if the plaintiffs are correct in characterizing § 50(h) as an "affirmative defense" in a case such as this, such a defense is not necessarily waived automatically, under the Federal Rules, through failure to include it in an answer. "Where [a] matter is raised in the trial court in a manner that does not result in unfair surprise, . . . technical failure to comply precisely with Rule 8(c) is not fatal." See *Allied Chemical Corporation v. Mackay*, 695 F.2d 854, 855-56 (5th Cir. 1983), citing *Jones v. Miles*, 656 F.2d 103, 107 n.7 (5th Cir. 1981).  Here, the conclusive reliance presumption from § 50(h) was raised well before trial,[3] in Bank of America's summary judgment motion, to which the plaintiffs had ample opportunity to respond.  Thus, Bank of America's "technical failure" to raise § 50(h) in its state court answer, if indeed it was a failure, did not cause any unfair surprise.

### C.   Alleged Section 50(a)(6)(B) violation

#### 1.  *Legal Standards*

The Texas Constitution protects the homestead of a family from forced sale for payment of all debts, except those few debts enumerated in Article XVI § 50(a) and meeting its requirements.  One debt exempted from the "no forced sale" rule is a home equity loan that fully meets the requirements of § 50(a)(6).  In order not to run afoul of the constitutional provision, a home equity loan must be

---

[3]     Trial in this matter is set for the court's May docket.  *See* Order Establishing Schedule and Certain Pretrial Requirements at 1 (docket entry 11).

> of a principal amount that when added to the aggregate
> total of the outstanding principal balances of all other
> indebtedness secured by valid encumbrances of record
> against the homestead does not exceed 80 percent of the
> fair market value of the homestead on the date the
> extension of credit is made.

Tex. Const. Art. XVI § 50(a)(6)(B).

For purposes of determining fair market value, Article XVI provides that

> [a] lender . . . may conclusively rely on the written
> acknowledgment as to the fair market value of the
> homestead property made in accordance with Subsection
> (a)(6)(Q)(ix) of this section if:
>
>> (1) the value acknowledged to is the value
>> estimate in an appraisal or evaluation
>> prepared in accordance with a state or federal
>> requirement applicable to an extension of
>> credit under Subsection (a)(6); and
>
>> (2) the lender . . . does not have actual
>> knowledge at the time of the payment of
>> value or advance of funds by the lender . . .
>> that the fair market value stated in the
>> written acknowledgment was incorrect.

Tex. Const. Art. XVI § 50(h).

### 2. *Application*

Bank of America's argument is straightforward.  It asserts that Plaza Home

Mortgage's 2008 loan to the plaintiffs of $70,000.00, which at the time was the only

outstanding indebtedness secured by the homestead, was less than 80% of the

$100,000.00 fair market value of the homestead shown in the March 13 appraisal and the Acknowledgment.  *See* Motion at 9.

The plaintiffs initially point to the affidavit of Dale Madsen, in which he states that he believed the fair market value of the property was $83,000.00 in 2008.  *See* Response at 9 ¶ 16; *see also* Appendix to Plaintiffs' Brief in Response to Defendant's Motion for Summary Judgment ("Plaintiffs' App."), Affidavit of Dale Lee Madsen, at 13 ¶ 5 (docket entry 18).  They argue that Texas law allows homeowners to testify about the value of their own property.  Response at 9.  The plaintiffs assert that because they have pointed to evidence that suggests the loan would have exceeded 80% of the property's fair market value, there is a genuine issue of material fact sufficient to defeat summary judgment in Bank of America's favor.  *Id.*

This evidence, however, is irrelevant, inasmuch as it does nothing to show that either the Acknowledgment was defective or that Bank of America's predecessor had knowledge that the fair market value stated in the Acknowledgment was incorrect. There is no evidence before the court to suggest that Bank of America's predecessor knew what Dale Madsen's subjective view of the value of his property was.  Even if there was, the lender would not be expected to credit this view in such a way that "knowledge . . . that the fair market value stated in the acknowledgment was incorrect" could be attributed to it.

The plaintiffs next make the argument that official records of the Dallas Central Appraisal District show that, for tax assessment purposes, the fair market value of the property in 2008 was $83,000.00.  Response at 9-10.  The plaintiffs also argue that, since the closing documents indicate that Bank of America's predecessor must have been aware of this appraisal, it had knowledge that the $100,000.00 figure stated in the Acknowledgment was incorrect.  Response at 10.  This argument has been rejected at least twice, in this district and one other, on the basis that appraisals from a public appraisal district are "relevant to valuation for taxation purposes only," not to fair market value in cases under Article XVI § 50.  See *Poswalk*, 2012 WL 2193982 at *3 (internal quotations omitted), quoting *Penrod v. Bank of New York Mellon*, 824 F.Supp.2d 754, 760 (S.D. Tex. 2011).  The court agrees with this reasoning and finds no reason to depart from it here.[4]

There is thus no genuine issue of material fact that the March 26, 2008 loan was extended to the plaintiffs in an amount not greater than 80% of the property's

---

[4]     The plaintiffs also make the argument that Bank of America's predecessor's failure to check the box on the Acknowledgment indicating that the value represented therein is the product of an appraisal means that the Acknowledgment falls outside the requirement of § 50(h)(1) that the value referenced in the Acknowledgment be a product of an "appraisal . . . prepared in accordance with a state or federal requirement."  Response at 11 ¶ 22.  The inferential chain leading to the conclusion that the Acknowledgment's $100,000.00 figure was the product of the March 13 appraisal is short indeed.  The court finds that Bank of America's predecessor's failure to check a box does not create a genuine issue of material fact about whether the Acknowledgment's fair market value figure was the product of a proper appraisal.

fair market value.  The plaintiffs also fail to raise a genuine issue of material fact that

Bank of America's predecessor knew that the fair market value stated in the

Acknowledgment was incorrect.  Bank of America is therefore entitled to summary

judgment on the plaintiffs' claims under § 50(a)(6)(B) of the Texas Constitution.

D.  Alleged Section 50(a)(6)(E) violation

1.  *Legal Standards*

Texas Constitution Article XVI § 50(a)(6)(E) mandates that a home equity

loan

> does not require the owner or the owner's spouse to pay, in
> addition to any interest, fees to any person that are
> necessary to originate, evaluate, maintain, record, insure, or
> service the extension of credit that exceed, in the aggregate,
> three percent of the original principal amount of the
> extension of credit.

TEX. CONST. ART. XVI § 50(a)(E).

Section 50(a)(6)(Q)(x) further provides that

> . . . the lender or any holder of the note for the extension
> of credit shall forfeit all principal and interest of the
> extension of credit if the lender or holder fails to comply
> with the lender's or holder's obligations under the
> extension of credit and fails to correct the failure to comply
> not later than the 60th day after the date the lender or
> holder is notified by the borrower of the lender's failure to
> comply by:
>
> > (a) paying to the owner an amount equal to
> > any overcharge paid by the owner under or
> > related to the extension of credit if the owner

- 11 -

> has paid an amount that exceeds an amount
> stated in the applicable Paragraph (E) . . .

TEX. CONST. ART. XVI § 50(a)(6)(Q)(x).

Finally, the Texas Administrative Code ("TAC") provides that

> [t]he lender or holder may correct a failure to comply
> under Section 50(a)(6)(Q)(x)(a)-(e), on or before the 60th
> day after the lender or holder receives the notice from an
> owner, if the lender or holder delivers required documents,
> notices, acknowledgments, or pays funds by:
>
>> . . . (2) crediting the amount to borrower's
>> account . . .

7 Tex. Admin. Code § 153.94(a)(2).

## 2. *Application*

Again, Bank of America's argument is straightforward.  Since the plaintiffs
were loaned $70,000.00, they should not have been charged more than $2,100.00 in
fees.  Motion at 6.  The plaintiffs were charged $4,805.84 as fees and closing costs,
and received a lender credit of $1,502.86.  *Id.*  Their actual total closing costs were
thus $3,302.98, for a total overcharge of $1,202.98.  *Id.* at 7.  Bank of America
argues that, in accord with TAC § 153.94, it credited the Madsens' account on
March 26, 2012 in an amount of $1,202.98.  *Id.* at 8.  This, Bank of America asserts,
constitutes timely cure, because it received notice of the overcharge violation from the
plaintiffs on January 26, 2012.[5]  *Id.* at 7.

---

[5]    Bank of America also argues that the notice it received from the
(continued...)

- 12 -

The plaintiffs do not dispute the amount of the overcharge or the fact that Bank of America credited their account. Instead, they respond that the only proper way to cure a fee overcharge is by making a separate payment to the owner. Response at 8-9 ¶¶ 13-15. They state that an account credit under TAC § 153.94(a)(2) is not the appropriate mechanism to cure a violation of § 50(a)(6)(E). *Id.* at 8 ¶ 13. TAC § 153.94(a)(2), rather, is -- in the plaintiffs' reading -- the proper method for curing violations of § 50(a)(6)(B). *Id.* The plaintiffs assert that "a defect under Art. XVI, § 50(a)(6)(E) means that Plaintiffs were overcharged and therefore should get a refund, whereas a defect under Art. XVI, § 50(a)(6)(B) means that the loan was for the wrong amount and a credit would reduce the amount of the loan to make it comply." *Id.*

The plaintiffs cite no authority for this tortured interpretation of the relevant constitutional and regulatory provisions. Moreover, the assertion that a violation of § 50(a)(6)(E) can only be cured by a "refund" (presumably the writing and sending of a check to the plaintiffs) is nonsensical and borders on the frivolous. It is incomprehensible to this court why an account credit should be a deficient mechanism for restoring to an owner an amount in fees that was overcharged. Whether Bank of America sent the plaintiffs a check or credited their account, the

---

[5](...continued)
plaintiffs was statutorily inadequate to trigger its obligation to cure. Motion at 7-8 ¶ 18. Because the court finds that Bank of America has timely cured the overcharge, it need not address this argument.

- 13 -

plaintiffs reach the same economic end.  The overcharge is cured.  The plaintiffs have failed to show there is a genuine issue of material fact as to whether Bank of America properly cured the admitted violation of § 50(a)(6)(E).

Bank of America is therefore entitled to summary judgment on the plaintiffs' claim of a violation under § 50(a)(6)(E) of the Texas Constitution.

### III.  CONCLUSION

For the reasons stated above, the defendant's motion for summary judgment is **GRANTED**.  Judgment will be entered for the defendant.

**SO ORDERED**.

March 6, 2013.

A. JOE FISH
**Senior United States District Judge**

- 14 -